## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**STEVEN HALL,**
       **Petitioner,**

**v.**                                              **Case No. 3:10cv71/MCR/MD**

**KENNETH S. TUCKER,**
       **Respondent.[1]**

---

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1). Respondent has filed a response (doc. 24) to which petitioner replied (doc. 29). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by Mr. Hall, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. It is further the opinion of the undersigned that the pleadings and attachments before the court show that Mr. Hall is not entitled to relief, and the petition is without merit and should be denied.

---

[1] Kenneth S. Tucker became Secretary of the Florida Department of Corrections on August 24, 2011, and is substituted as the respondent.

## BACKGROUND AND PROCEDURAL HISTORY

The petitioner, Steven Hall, was indicted by grand jury in the Circuit Court of Escambia County, Florida, for premeditated or felony murder in violation of Sections 782.04 and 775.087, Florida Statutes (2001) (doc. 24, ex. B).[2]  The indictment stated Mr. Hall, while committing a robbery, killed Lena Blackwell by stabbing her with a sharp object (ex. B).  Mr. Hall was tried by jury and adjudicated guilty of first degree murder on May 11, 2004.  (Ex. L, p. 107) (case no. 2001 CF 4264).  The court sentenced him to a term of life imprisonment without parole with two years thirty-two days of credit time (ex. L, p. 109).

Mr. Hall appealed the conviction and sentence to the First District Court of Appeal ("1st DCA") (ex. M).  Through counsel, Mr. Hall raised two issues: 1) the trial court erred by restricting cross-examination of witnesses, depriving him of his Fifth Amendment right to confrontation; and 2) the trial court erred by allowing the prosecutor to introduce irrelevant and highly prejudicial evidence of his drug use (ex. N).  On June 9, 2005, the First DCA *per curium* affirmed the conviction and sentence without written opinion.  *Hall v. State of Florida*, 903 So.2d 939 (Fla. 1st DCA 2005) (Table) (copy at ex. P).

On February 15, 2006, Mr. Hall filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, raising twelve grounds for relief (ex. Q).  He amended his motion on December 4, 2006, to include a thirteenth ground for relief (ex. R).  On June 29, 2007, the Rule 3.850 court held a limited evidentiary hearing on Grounds One, Two, Three, Four, Seven, and Thirteen (exs. S, T).  Mr. Hall's appointed counsel submitted a pre-hearing evidentiary argument and post-hearing memorandum of law on the issues presented at the hearing (exs. T, V).  Mr. Hall filed *pro se* supplements to his motion for post-conviction relief on September 26, 2007, and February 18, 2008 (exs. W, X). On April 11, 2008, the Rule 3.850 court considered the motion, amendments, and

---

[2]  Hereafter all references to exhibits will be to doc. 24 unless otherwise noted.

supplements, and denied relief by a written decision (ex. Y and attach.).  Mr. Hall, through counsel, appealed the decision to the First DCA (ex. Z).  He raised four issues, corresponding to Grounds One, Two, Five, and Fourteen of his post-conviction motion (ex. AA).  The State filed an answer brief, and Mr. Hall replied (exs. BB, CC).  On January 12, 2010, the First DCA *per curiam* affirmed the Rule 3.850 court's decision without written opinion.  *Hall v. State of Florida*, 25 So.3d 1226 (Fla. 1st DCA 2010) (Table) (copy at ex. DD).

Mr. Hall filed the instant petition for federal habeas corpus on March 3, 2010 (doc. 1).  Respondent has not expressly waived the exhaustion requirement.  *See* 28 U.S.C. § 2254(c).


## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  Section 2254(d)(2) must be divided into two separate inquiries:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).   The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling.  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313,

---

[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

1315 (11th Cir. 2010).  Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  A state court's

application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles*, 129 S. Ct. at 1419.  Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[4]  The Eleventh Circuit granted a limited Certificate of

---

[4]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel. *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, concluding that Mr. Gill's waiver of counsel was not knowing and intelligent.  *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  It also denied the second motion, but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy.  *Gill*, 633 F.3d at 1284. He was convicted, and the Florida Second District Court of Appeal ("Second DCA") affirmed

Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning." *Id.* at 1286.[5]

The court acknowledged the well-settled principle that summary affirmances, such as the Florida Second District Court of Appeal's, are presumed adjudicated on the merits and warrant deference. *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id* at 1291 (agreeing with the Fifth Circuit court in

---

without opinion the trial court's denial of post-conviction relief. *Id.* at 1284-85. Mr. Gill then filed a petition in federal court, which petition the court denied with prejudice. *Id.* at 1284-85.

[5] The court reviewed Gill's claims that the federal habeas court erred in two respects. First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288. Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.* Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel. *Id.*

*Neal, supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[6]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786.  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (2007) (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or

---

[6]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

denied.  *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).  The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

**Ineffective assistance of counsel.**

Petitioner contends in some of his grounds for relief in this court that he was denied his constitutional right to the effective assistance of counsel.  The Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  To prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins,* ___ U.S. ___, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010).  Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler*, 218 F.3d at 1314.  Courts must make "every

effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").  The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately."  *See White v. Singletary*, 972 F.2d 1218, 1221 (11ᵗʰ Cir. 1992).  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11ᵗʰ Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11ᵗʰ Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11ᵗʰ Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11ᵗʰ Cir. 2005).  Petitioner must show a reasonable probability exists that the outcome would have been different.  *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be

"applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.  As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*, 129 S. Ct. at 1420 (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, ___ F.3d ___, 2011 WL 2540573 (11th Cir. Jun. 28, 2011) (quoting *Harrington*, 131 S. Ct. at 785 (2011)*.*  Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground.  *See Rogers*, 13 F.3d at 386.

## Exhaustion and Default

Respondent contends some of Mr. Hall's ground fro relief are unexhausted (doc. 24).  A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and

correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same).  This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle the petitioner to relief.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, the petitioner must present the same facts and claims in state court about which he petitions the federal court.  *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant. . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material. . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 6-7,

163 L. Ed. 2d 1 (2005).  And, simply labeling the claim "federal" may be sufficient to fairly present the claim.  *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (dictum).

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.").  This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state constitution.  *Id.* at n.5; *McNair v. Hall*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) ("a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record" (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888; *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the

federal court may address the petition.[7]  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557.
However, when any future attempt to exhaust state remedies would be futile under
the state's procedural default doctrine, the default is *per se* adequate state grounds
independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S.
255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) (federal habeas court
need not require a federal claim be presented to a state court if the state court would
hold the claim procedurally barred).

The adequacy of a state procedural bar to the assertion of a federal question
is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151
L. Ed. 2d 820 (2002).  To foreclose federal review, the state procedural bar must be
firmly established and regularly followed, that is, not applied in an arbitrary or
unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857,
112 L. Ed. 2d 935 (1991).  A state procedural bar is firmly established and regularly
followed when the state has put litigants on notice of the rule, and the state has a
legitimate interest in the rule's enforcement.  *Maples v. Allen*, 586 F.3d 879, 888 (11th
Cir. 2009) (*citing* Lee*,* 534 U.S. at 385-88, 122 S. Ct. at 890-92)).

To overcome a procedural default so that the federal habeas court may reach
the merits of a claim, the petitioner must show either "cause for the default and
actual prejudice resulting therefrom," or a fundamental miscarriage of justice.
*Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v.
Head*, 209 F.3d 1257, 1261 (11th Cir. 2000).  Cause exists when an external
impediment, such as governmental interference or the reasonable unavailability of
the factual basis for the claim, prevented petitioner from raising the claim.
*McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991).
To meet the miscarriage of justice exception, the petitioner must show that "a
constitutional violation has probably resulted in the conviction of one who is

---

[7]  The "adequate and independent state grounds" rule applies equally to procedural and substantive
state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

actually innocent" because "it is more likely than not that no reasonable juror would have convicted him."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995).  Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*  In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case.  *Id.*


Deference to state court findings of fact

Federal habeas courts defer to the state court's findings of fact, unless the petitioner shows by clear and convincing evidence that it was unreasonable.  *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1); *Callahan v. Hall*, 427 F.3d 897, 926 (11th Cir. 2005) ("§ 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2)."); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record").  Under the AEDPA, the state court does not have to explicitly state its findings of fact.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008).  State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory. *Early*, 537 U.S. at 8, 123 S. Ct. at 365.  A summary adjudication with a brief, or total

lack of, statement of reasons is still an adjudication on the merits.  *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue."  *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnenmaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) (". . .the *Harris* presumption only applies after habeas court determines 'the relevant state court decision. . .fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2559, 115 L. Ed. 2d 640 (1991)).

## PETITIONER'S GROUNDS FOR RELIEF

### UNEXHAUSTED GROUNDS

Respondent is correct that Mr. Hall's Grounds Two, Four through Six and Eight through Fourteen are unexhausted because Mr. Hall did not raise them in his Rule 3.850 appeal (doc. 24).[8]  The claims to which respondent asserts exhaustion as an affirmative defense are:

2.	Trial court error in allowing the prosecutor to introduce evidence of Mr. Hall's drug use.  (Direct Appeal Issue II)

4.	Ineffective assistance of counsel for failing to call Robert Allen, Marcus Wright, and Detective Chamberlain as witnesses at the suppression hearing.  (Rule 3.850 motion Ground II)

---

[8]  Respondent does not contend Ground Four is unexhausted as to Mr. Hall's private attorney, Robert Allen.  The court reviews that claim below.

5.      **Ineffective assistance of counsel for failing to present an alibi defense. (Rule 3.850 motion Ground III)**

6.      **Ineffective assistance of counsel for failing to request an alibi jury instruction.  (Rule 3.850 motion Ground IV)**

8.      **Ineffective assistance of counsel for failing to request a *Franks*[9] hearing to attack the validity of the affidavit for search warrant.  (Rule 3.850 motion Ground VII)**

9.      **Ineffective assistance of counsel for failing to present evidence of an alternative suspect.  (Rule 3.850 motion Ground VIII)**

10.     **Prosecutorial misconduct by knowingly using perjured testimony to secure an indictment and conviction.  (Rule 3.850 motion Ground IX)**

11.     **Ineffective assistance of counsel for failing to move to dismiss the indictment.  (Rule 3.850 motion Ground X)**

12.     **Ineffective assistance of counsel for failing to adequately impeach witness Alan Coby with prior inconsistent statements.  (Rule 3.850 motion Ground XI)**

13.     **Ineffective assistance of counsel by cumulative error for failing to investigate and prepare for trial.  (Rule 3.850 motion Ground XII)**

14.     **Newly discovered evidence.  (Rule 3.850 motion Ground XIII)**

Mr. Hall's failure to exhaust his direct appeal claim will be discussed separately from the post-conviction claims.

**Ground Two**

Mr. Hall's second ground for relief alleges the trial court erred in allowing the prosecutor to introduce evidence that Mr. Hall purchased and used crack cocaine the night of the homicide (doc. 1, p. 4; doc. 2, p. 2).  This was an error because it was

---

[9] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).  The purpose of a *Franks* hearing is to determine whether a facially sufficient affidavit for a search warrant was based on a police officer's false statements.

irrelevant, never linked to the homicide, and "highly prejudicial bad character evidence." (Doc. 2, p. 2). Mr. Hall concludes "[a]dmission of this evidence violated Petitioner's rights to due process and a fair trial. Amend. V, VI, XIX, U.S. Const." (*Id.*)

Mr. Hall raised this argument as Issue II of his direct appeal (*see* ex. N, pp. 24-29). The First DCA summarily denied relief on this issue (ex. P.).

Mr. Hall's counsel, Mr. Sheehan, filed a motion in limine to exclude all evidence of Mr. Hall's drug use (ex. C). He supported the motion by stating the evidence was not relevant to a material fact in issue, except to prove "bad character or propensity" (ex. C, p.9). He also asserted the probative value of the evidence was greatly outweighed by the unfair prejudice and it would "create a substantial danger that the Defendant would be convicted because the jury would infer that he is a bad man." (Ex. C, p. 10). Mr. Sheehan relied on Florida Rules of Evidence:

> Florida Rules of Evidence generally prohibits the introduction of evidence of extrinsic acts that adversely reflect on the Defendant's character[.] This rule of evidence is one of exclusion unless the evidence is relevant and probative of some issue in the case such as motive, intent, or knowledge[.] The evidence is excludable if it is being offered to show the propensity of the Defendant to commit crimes[.] The evidence is also excludable if its prejudicial value outweighs its probatrve [sic] value[.] The Defendant asserts that the government is seeking to introduce this evidence to show that the Defendant is a criminal and that he has a propensity to commit crimes[.]

(Ex. C, p. 10). Mr. Sheehan also filed a motion to suppress all statements and evidence from May 1, 2001, to the date of Mr. Hall's first appearance as the product of an illegal search and seizure (ex. D). During a police interview on May 1, 2001, Mr. Hall admitted to smoking marijuana (ex. D, p. 13; ex. E, p. 16).[10]

On October 20, 2003,the court denied Mr. Sheehan's motion in limine as it related to cocaine use (ex. EE, dkt. 177). On October 23, 2003, the court granted the motion to suppress statements taken by Pensacola Police Department Detective

---

[10]  The docket shows Mr. Sheehan filed another motion to suppress statements and evidence on October 21, 2003 (ex. EE).

Goss on May 1, 2001, but denied the motion to the extent it sought to exclude subsequent statements and evidence (ex E, pp. 122-125; ex. EE, dkt. 193-195).[11]

At trial, Alan Coby, who shared a dorm area with Hall, testified that Mr. Hall talked to him about the murder while they were inmates (ex. E, p. 319).  He stated Mr. Hall told him he stole some money after he stabbed the victim and "[h]e was at the Grand Hotel smoking, trying to sell whatever he bought, crack, marijuana to come back up so he could get the jewelry [he pawned] back."  (Ex. E, p. 322).  Mr. Sheehan did not object to the testimony.  On cross-examination, Mr. Sheehan asked, "But he got money and went to the Grand Hotel and smoked it up?" (Ex. E, p. 345).  Mr. Hall also testified that he used marijuana at the Grand Hotel the night of the murder (ex. E, p. 562).  The State's closing argument referred to Mr. Hall's crack cocaine use several times (Ex. E, 601, 607-07, 610).  Mr. Sheehand did not object.  In his closing argument, Mr. Sheehan urged the jury not to be distracted by Mr. Hall's use of crack cocaine and marijuana because these acts do not create an inference of guilt (ex. E, pp. 643-44).

The record clearly shows that the trial court denied Mr. Sheehan's motion to suppress evidence of Mr. Hall's cocaine use.  An appellate court reviews a trial court's decision regarding admissibility of evidence for abuse of discretion.  *Ray v. State of Florida*, 755 So.2d 604, 610 (Fla. 2000).  The First DCA adjudicated Mr. Hall's claim on the merits.  This court can infer the First DCA ultimately concluded he did not show a clear abuse of discretion.  Its decision necessarily rested on independent and adequate state procedural law grounds and is barred from review in habeas court.  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557.  Furthermore, Mr. Sheehan did not object to evidence or testimony about Mr. Hall's marijuana use.  Therefore, the issue was not preserved for appellate review.  *See* Fla. Stat. § 924.051(3).

---

[11]  The court also ruled that the May 2, 2001, arrest was not illegal, but the issue was moot in light of his other rulings (ex. E, p. 127).

Mr. Hall's claim would be unexhausted even if the grounds had been preserved for appeal because he did not raise a federal constitutional claim on appeal. His brief cites to and rests solely on state law (see Ex. N, pp. 24-29). Unlike Issue I of the brief, which includes citation to federal law and at least one full sentence regarding the Confrontation Clause, Issue II states: "Admission of this evidence violated Hall's rights to due process and a fair trial. Amend. V, VI, XIV U.S. Const.; Art. I, Secs. 9, 16 Fla. Const." (Ex. N, p. 24). This is the only reference to the federal constitution and does not constitute a federal claim. As stated in *McNair*, *supra*, "a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record. "416 F.3d at 1302-03. Appeals to a broad constitutional guarantee such as "due process" fail to present the substance of a claim to the state court. *Anderson*, 459 U.S. at 7, 103 S. Ct. at 278.

Mr. Hall's argument was based on Florida law and did not present a federal claim to the state court for resolution. It is too late for Mr. Hall to return to the state courts to cure the default and the claims are therefore defaulted in this court. Mr. Hall is not entitled to federal habeas relief, and the writ should not issue.


**Grounds Four through Six and Eight through Fourteen**

Respondent contends Mr. Hall's Ground Four through Six and Eight through Fourteen are unexhausted because he did not raise them in his Rule 3.850 appeal (doc. 24). Mr. Hall responds that the court should excuse the default because he asked his attorney to preserve all 3.850 motion claims for federal review (doc. 29, p. 22). The majority of Mr. Hall's response offers additional arguments to support Grounds Four, Five, Six, Thirteen, and Fourteen.

Mr. Hall has not shown cause or prejudice for his failure to present these issues to the First DCA, nor has he shown that he is probably actually innocent. His response contains additional arguments and attachments to support of his claims, but he does not contend an external impediment prevented him from raising these

grounds on appeal or that he is actually innocent of the crime for which he was convicted.

Response Attachment Six is a letter from Mr. Hall's appellate attorney, Edgar Elzie (doc. 29, attach. 6).  In the letter, Mr. Elzie acknowledges Mr. Hall's desire to raise every post-conviction motion claim on appeal to preserve them for federal review.  However, Mr. Elzie states that he has an obligation to "raise only those issue as to which [he] believe[s] [he] can make a good faith argument that is supported by the record and the law."  Mr. Elzie suggests that Mr. Hall file a motion to discharge him as counsel to allow Mr. Hall to proceed pro se.  He explains that Mr. Hall could then strike the initial brief (that raises only four issues) and submit a new brief raising all fourteen issues.  He also explains that the Florida Rules of Appellate Procedure do not provide for filing supplemental briefs for Rule 3.850 appeals.  As He warns that, as a result, if the First DCA does not grant Mr. Hall's motion to proceed pro se, he cannot file a pro se brief.  (Doc. 29, attach. 6).

In 2010, the Eleventh Circuit decided that the Florida "rule" precluding filing pro se supplemental briefs was neither firmly established nor regularly followed. *Hitchcock v. Sec'y Dep't of Corr.*, 380 Fed. Appx. 82, 85-86 (2010) (unpublished opinion).  The court held that the First DCA's refusal to permit Mr. Hitchcock to file a pro se supplemental brief raising the Rule 3.850 motion claims not raised in the initial brief filed by counsel was not an independent and adequate state ground to deny review.  *Id.* at 86.  The court held that Hitchcock's counsel's brief and Hitchcock's supplemental brief satisfied the fair presentation requirement permitting review in federal habeas court.  *Id.*

The facts in *Hitchcock* are distinguishable from Mr. Hall's case, and the holding is not applicable here.  Mr. Hall cannot be faulted for failing to file a supplemental brief because his counsel explicitly advised him that the procedural rules did not allow supplemental briefs.  However, his counsel suggested an alternative method for Mr. Hall to attempt to present his claims, and he chose not to pursue that course of action.  The record shows Mr. Hall never filed a motion to

discharge his attorney or any other motion to allow him to present additional claims. *See Steven Samuel Hall v. State of Florida*, Florida First District Court of Appeal case no. 1D08-2271 (available at http://www.1dca.org/).

Mr. Hall has not shown why this court should excuse his procedural default, and he has not shown a fundamental miscarriage of justice. It is too late for Mr. Hall to return to the state courts to cure the default and the claims are therefore defaulted in this court. Mr. Hall is not entitled to federal habeas relief on these grounds, and the writ should not issue.


## EXHAUSTED CLAIMS

**Ground One          Trial court error in restricting cross-examination and impeachment of the State's key witness.**

Mr. Hall alleges the trial court erred in restricting defense counsel's ability to inquire on cross examination whether the State's key witness, Alan Coby, had written letters to the prosecutor seeking favors (doc. 1, p. 4; doc. 2, p. 1). Mr. Coby testified Mr. Hall made incriminating statements to him while they were in county jail together (doc. 2, p. 1). The court allowed defense counsel to introduce Mr. Coby's letter asking to have another inmate moved to his dorm area. However, the court "prohibited the defense from establishing that the inmate Coby wanted to move was his homosexual lover." (Doc. 2, p. 2). The court found the evidence was unfairly prejudicial (*id.*). Mr. Hall contends the evidence of a homosexual relationship would have impeached the credibility of the State's key witness by showing he had a motive to lie, and that the court's restriction violated his Fifth, Sixth, and Fourteenth Amendment rights to due process and to confront adverse witnesses (*id.*).

### Exhaustion

Mr. Hall raised this argument as Issue I of his direct appeal (*see* ex. N, pp. 17-23). The First DCA summarily denied relief (ex. P.). Respondent contends this issue is unexhausted (doc. 24, p. 9). It states: ". . .for Petitioner's present federal constitutional claim to have been cognizable in the state appellate court, Petitioner

was required to first assert it as the basis for his claim in the trial court." (*Id.*). Respondent argues Mr. Hall only asserted a state evidentiary law basis for introducing impeachment evidence at trial. (*Id.*) (citing ex. E, pp. 381-389, 402-403). The record indicates Mr. Sheehan argued that extrinsic evidence that Mr. Coby wanted his homosexual lover to be moved to his dorm area should be admitted to impeach Mr. Coby's credibility regarding his motive for testifying favorably for the State (ex. E, p. 374-77).

The State objected to any evidence of Mr. Coby's sexuality as highly prejudicial and inadmissible as a collateral matter (ex. E, p. 381). The court clarified that unless Mr. Sheehan had extrinsic evidence, he was limited to questioning Mr. Coby about his general motive for having the prosecutor move a friend to his dorm area because Mr. Coby denied being a homosexual (ex. E, pp. 381-82). *See Caruso v. State of Florida*, 645 So.2d 389, 394 (Fla. 1994) (a cross-examiner must "take" the answer of a witness regarding an irrelevant or collateral matter and cannot impeach the witness with extrinsic evidence). Mr. Sheehan responded:

> MR. SHEEHAN:     Judge, I asked you to issue a writ, you did. There's a witness named Ernest Archie, he's a Jefferson Correctional Institute inmate. This man has admitted he knows him and he knows Zoe. Our evidence is now, first of all we have a letter where he's currying favor to the prosecution to show bias, motive, favorable testimony. It's not a collateral matter because he's not lied about the reason that he needs assistance. Ernest Archie will testify that he knows that Zoe is gay and that they have a gay relationship.. . .And that is very critical information if he would lie to the prosecutor about his motive for currying favor - - I mean lie to this jury about motive for currying favor, to try to get favorable treatment for somebody who he is maybe in love with and has this relationship.

(Ex. F, pp. 382-83). Despite the court's doubts about admissibility, it allowed Mr. Sheehan to proffer testimony from Mr. Archie, which testimony was consistent with Mr. Sheehan's argument (ex. F, pp. 387, 394-401).

The court disallowed the testimony based on a Florida rule of evidence:

      **THE COURT:**    **The Court after, you know, after hearing the testimony I mean, it doesn't change my feeling about it, that the - - that the nature of the relationship is, I suppose, probative to the extent that it may show a heightened desire on the part of Mr. Coby to try to get some preferential treatment.  But at the same time, that heightened probative value is outweighed by the unfair prejudice that that would cause to the State by virtue of the jury then being side tracked on that whole issue.  And so the Court finds that this entire proffer is not admissible, and therefore, any questions to the witness, Mr. Coby, about the relationship being one of homosexuality, which he has denied, cannot be made in the presence of the jury.**

      **The friendship, close friendship, best friends, you know, however, you want to - - anything that he admits to is fine. [The jury] can draw their own inference from that.   But beyond that, the homosexual aspect of it, as I said, it does have some relevance, does have some probative value but it's clearly outweighed under 403.  That's the Court's ruling.. . .**

(Ex. E, pp. 402-03).

      Section 924.051(3), Florida Statutes, states:  "An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error."  (2003) (*other sections invalidated by Allen v. Butterworth*, 756 So.2d 52 (Fla. 2000).  Mr. Hall's brief on appeal does not argue fundamental error, although error that amounts to a denial of due process is fundamental error.  *Ray v. State of Florida*, 403 So.2d 956, 960 (1981) (fundamental error is applied only in rare cases with a compelling demand).  Therefore, Ground One is unexhausted and defaulted under Florida law if it was not properly preserved at the trial court level.

      The undersigned finds Mr. Sheehan properly preserved the argument for appeal, the appeals court ruled on the issue on the merits, and thus, the issue is cognizable for federal habeas purposes.  A close reading of *Steinhorst v. State of Florida*, 412 So.2d 332 (Fla. 1982), on which respondent relies for its statement of law, reveals that the Florida Supreme Court *did* find the appellant's Confrontation Clause argument preserved when his line of inquiry was "relevant to the issue of the

witness's credibility" and "calculated to impeach the credibility of the witness." 412
So.2d at 337, 338.[12]

Furthermore, there is no requirement that "a defendant intone special 'magical
words' in order to preserve a constitutional claim." *Corona v. State of Florida*, 64
So.3d 1232, 1242 (Fla. 2011) (citing, e.g*., Murray v. State of Florida*, 3 So.3d 1108,
1117 (Fla. 2009) (concern must be "sufficiently specific" to inform court of the error).
The purpose of the rule is to place the trial judge on notice and give him an
opportunity to correct a possible error. *Harrell v. State of Florida*, 894 So.2d 935, 940
(Fla. 2005).

The Sixth Amendment right to confront his accusers includes the right to
effective cross-examination. *Childers*, 642 F.3d at 970 (citing *Delaware v. Van
Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986).

> A limitation on cross-examination can violate the Sixth
> Amendment right to confrontation if it prevents the defendant from
> showing that a witness is biased:
>
>> [A] criminal defendant states a violation of the Confrontation Clause
>> by showing that he was prohibited from engaging in otherwise
>> appropriate cross-examination designed to show a prototypical form
>> of bias on the part of the witness, and thereby "to expose to the jury
>> the facts from which jurors ... could appropriately draw inferences
>> relating to the reliability of the witness."
>
> *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S. Ct. 1431, 1436, 89 L.
> Ed. 2d 674 (1986). The discretion of a trial judge to limit
> cross-examination is more narrowly circumscribed when the witness
> is vital to the case presented by the government: "where the witness
> sought to be cross-examined is the government's 'star' witness,
> providing an essential link in the prosecution's case, the importance of
> full cross-examination to disclose possible bias is necessarily

---

[12]  The court in *Steinhorst* did apply the preservation rule to the appellant's alternate argument that
the trial court's ruling limiting cross-examination denied him the right to develop a "viable defense
theory[.]" 412 So.2d at 338.  The court noted this argument was not presented to the trial court and
was therefore not preserved for appeal.  *Id.*

increased." *United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir.1992).

*De Lisi v. Crosby*, 402 F.3d 1294, 1300-01 (11th Cir. 2005). Here, as in *Lankford, supra*, Mr. Sheehan was seeking to impeach the State's "star witness" to show bias. Mr. Sheehan's argument is so closely related to a Confrontation Clause violation that the trial court was on notice of the possible error.

        <u>State Court Decision</u>

        The First DCA *per curiam* affirmed the trial court's judgment and sentence without written opinion (ex. P).

        <u>Federal Review of State Court Decision</u>

        This court presumes the state court adjudicated Mr. Hall's claims on the merits because of "the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 785. If the trial court erred, the error is subject to harmless error analysis. The United States Supreme Court held in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) that the standard for determining whether a petitioner is entitled to habeas relief is not the "harmless beyond a reasonable doubt" standard set out in *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967). The court reasoned that the strict *Chapman* analysis is appropriate for direct review, but the standard for collateral review should be less onerous to "[promote] the considerations underlying habeas jurisdiction." 507 U.S. at 623, 113 S. Ct. at 1714. The Court held the appropriate question is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."[13] 515 U.S. at 623, 113 S. Ct. at 1714 (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)). The Eleventh Circuit has also held that even claims alleging a

---

[13] Florida prescribes that in criminal appeals, an error is harmless, and thus a judgment shall not be reversed, "unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant." Fla. Stat. § 924.33 (2003).

Confrontation Clause violation because of "trial errors are subject, on habeas review, to an even less exacting standard than that employed on direct review." *De Lisi*, 402 F.3d at 1301 (citing *California v. Roy*, 519 U.S. 2, 5, 117 S. Ct. 337, 338, 136 L. Ed. 2d 266 (1996) (where a judge in a habeas proceeding is in grave doubt as to harmlessness of error, petitioner must win))."[E]rrors or defects that have little, if any, likelihood of having changed the result of the trial" should not be set aside. *Chapman*, 386 U.S. at 22, 87 S. Ct. at 827.

The Sixth Amendment guarantees the right to effective cross examination, which includes addressing "biases, prejudices, or ulterior motives." *Childers*, 642 F.3d at 972 (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974)); *see United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 842, 98 L. Ed. 2d 951 (1988). The Confrontation Clause "guarantees only an *opportunity* for cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S. Ct. 2658, 2664, 96 L. Ed. 2d 631 (1987) (internal quotations omitted) (emphasis in original). So long as the defendant has the opportunity for effective cross-examination, the trial court "retains broad discretion" to limit its scope. *See, e.g.*, *Childers*, 64 F.3d at 973.

The facts in *Van Arsdall*, *supra*, are instructive in reviewing the instant issue. In *Van Arsdall*, defense counsel wanted to impeach a witness by questioning him about his agreement with the prosecution to testify about the defendant's murder case in exchange for dismissing a criminal charge against him. 475 U.S. at 676, 106 S. Ct. at 1433. The trial court heard testimony outside the presence of the jury. The witness admitted he had made the agreement but denied that it affected his testimony. *Id.*, 106 S. Ct. at 1434. The court barred all cross-examination about the

agreement based on Delaware Rule of Evidence 403.  *Id.*[14]  On review, the Supreme Court held:

> . . .[T]he trial court prohibited *all* inquiry into the possibility that Fleetwood would be biased as a result of the State's dismissal of his pending public drunkenness charge. By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause.

475 U.S. at 679, 106 S. Ct. at 1435 (emphasis in original).  However, the Court reiterated that trial judges retain wide latitude to "impose reasonable limits on such cross-examination" based on concerns about harassment, prejudice, and confusion of the issues, among other things.  *Id.*

The record here shows the trial judge determined that the probative value of the impeachment testimony–Mr. Coby's favorable testimony may be biased by his desire to have his homosexual lover in his dorm area–was outweighed by the unfair prejudice that the jury would be "side tracked on that whole issue."  (*See* ex. E, p. 403).  The First DCA's summary affirmance is not objectively unreasonable.  Mr. Sheehan's proffered testimony discussed in depth how a homosexual man becomes another homosexual man's "baby" or "sissy" in prison in a way that could have detracted from the core issues beyond its probative value as evidence of bias (*see* ex. E, pp. 374-80, 394-402).  More importantly, the trial court did not limit *all* inquiry into Mr. Coby's motive for testifying.  Mr. Sheehan was allowed to inquire into why he wrote the letter to the prosecution, including whether it was because of a "close friendship, [or] best friend[ ]. . .."  (Ex. E, p. 403).  As respondent states, "Petitioner was free to examine Coby's interest in currying favor with the State to obtain its

---

[14]  Delaware Rule of Evidence 403 is virtually identical to Florida Rule of Evidence 403:
>     Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

Del. R. Evid. 403.

assistance in having his "close friend/brother" transferred and Petitioner did so at trial." (Doc. 24 (citing ex. E, pp. 406-09, 627-28)).  He had the opportunity to present the jury with information from which it could conclude whether the State "furnished the witness a motive for favoring the prosecution in his testimony."  *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435.  In short, he had the opportunity for effective cross-examination.  Mr. Hall has not shown he was deprived of a constitutional right.  To the extent the trial court committed error, the error was harmless.

The state court's opinion did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Hall is not entitled to federal habeas relief on this claim, and the writ should not issue.

Ground Three          <u>Ineffective assistance of counsel for failing to suppress Mr. Hall's statements to police on the basis of an *Edwards*[15] violation.</u>

Mr. Hall's third ground for relief alleges his counsel was ineffective for moving to suppress statements he made to the police on the grounds of a Fourth Amendment search and seizure violation instead of a Fifth Amendment *Edwards* violation (doc. 1, p. 4; doc. 2, p. 3).[16]  During a police interrogation on July 17, 2001, Mr. Hall made statements about possessing a copy of the victim's house keys and several items of her jewelry, which evidence was used at trial to prove his guilt.  He concludes this evidence would have been suppressed had defense counsel raised an *Edwards* violation claim (*id.*).  Without the evidence, "there is a great probability

---

[15]  *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981).

[16]  Mr. Hall also contends if his counsel had called Mr. Hall's former attorney, Robert Allen, to the suppression hearing, he would have refuted Detective Goss's testimony that Mr. Allen gave Detective Goss permission to talk to Mr. Hall (doc. 2, p. 3).  This claim will be addressed with Ground Four.

that the outcome of [his] trial would have been different" (*id.*).  Mr. Hall raised this issue as Ground I of his Rule 3.850 motion for post-conviction relief (ex. Q, p. 1).[17]

### State Court Decision

The Rule 3.850 court granted an evidentiary hearing on this ground (ex. U), and subsequently denied relief (ex. Y).  Detective Goss testified he called attorney Robert Allen before interrogating Mr. Hall on July 17, 2001.  (Ex. Y, p. 456; ex. U, pp. 325-26).  Detective Goss was aware that Mr. Allen represented Mr. Hall during a previous interrogation.  He testified that Mr. Allen "said it was okay with him and to go ahead and talk to him." (*Id.*).  Detective Goss also testified his partner, Detective Chamberlain, informed him that he had talked to Mr. Allen (ex. U, p. 63).  Mr. Allen testified he did not recall whether the detectives called him, but based on his practice, he did not think he would have advised Mr. Hall to make a statement (ex. Y, p. 456; ex. U, p. 12).[18]  Furthermore, he testified Mr. Hall was anxious to give a statement on May 2, 2001, because he thought it would "dissuade the detectives from charging him with murder." (Ex. Y, p. 456; ex. U, p. 9).  Detective Goss agreed that Mr. Hall wanted to give a statement.  In the course of preparing trial, defense counsel contacted Mr. Allen, but in his judgment Mr. Allen "was not going to be able to assist Mr. Hall at his suppression hearing." (Ex. Y, p. 457; ex U, p. 89).

The Rule 3.850 court found Detectives Goss and Chamberlain to be credible witnesses (ex. Y, p. 457).  It found defense counsel was not deficient in his performance, and his decision not to call Mr. Allen at the suppression hearing was based on strategy and reasonable professional judgment.  (*Id.*) (citing *Strickland*, *supra*).  It further found Mr. Hall failed to meet the prejudice prong of the *Strickland*

---

[17]  The statement of the issue is framed differently, but the arguments in his petition and post-conviction motion are identical.

[18]  From the chronology of Mr. Allen's testimony, the undersigned believes this statement referred to the May 1-2, 2001, interrogations in particular, but his testimony regarding the July 17 interrogation is not inconsistent with how he describes his general practice.

test because he did not show than an argument for suppression based on *Edwards* violation would have been successful (*Id.* at 458).

> ### Federal Review of State Court Decision

The Rule 3.850 court analyzed Mr. Hall's claim under the *Strickland* standard and concluded he did not show his counsel was deficient or that he was prejudiced by his counsel's failure to move for suppression based on an *Edwards* violation. When a petitioner claims his counsel was ineffective for failing to file a timely motion to suppress, the petitioner must prove to following:

> (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth [or Fifth] Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence.

*Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83, 91 L. Ed. 2d 305 (1986)). The state court's findings of fact are entitled to deference under the AEDPA. This court reviews the decision to determine whether the state's ultimate conclusion is objectively reasonable. The record reveals that the trial court, Rule 3.850 court, witnesses, and even counsel in this case confused the facts of three separate interrogations. The undersigned concludes the state court's ultimate decision is correct. However, because the Rule 3.850 court's decision does not explain why an *Edwards* violation argument would have failed, the undersigned finds it useful to set out the facts of each interrogation to clarify why habeas relief is not warranted.

Mr. Sheehan sought to suppress evidence and statements, arguing that Mr. Hall's May 2, 2001, arrest was an illegal seizure under the Fourth Amendment and that he was not properly administered the *Miranda*[19] warnings in violation of the Fifth Amendment. The pre-trial suppression hearing focused on the admissibility of statements and evidence gained from three interrogations conducted on May 1, May

---

[19] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2, and July 17, 2001.  Although Mr. Sheehan sought broadly to exclude all statements and evidence from May 1 to arraignment, the parties narrowed the issues to Mr. Hall's admissions as to drugs and prostitution on May 1,[20] photographs taken on May 2, and statements about the victim's house keys and jewelry on July 17 (*see* Ex. E, pp. 88-94).   The trial court found that the May 1 statements about drugs and prostitutes were inadmissible (ex. E, p. 122-23).   It found that the State was not seeking to introduce any statements or evidence obtained on May 2 (*id.* at 123), but even if it was, and assuming the May 2 arrest was illegal, the investigators' purpose for having Mr. Hall arrested (on a violation of probation) was to secure his presence for future investigation, not to procure a statement (*id.* at 124).  "So the purpose and flagrancy of the [sic] what's alleged to be the misconduct is not adequate to warrant the suppression of the July 17th statement."  (Ex. E, p. 124).

The trial court offered an alternate conclusion, which the Rule 3.850 court adopted in its decision:

> At the pre-trial suppression hearing, the Court ruled that Defendant's statements on July 17, 2001, were voluntarily made, saying, "He [Defendant] mentioned that he had spoken to a couple of attorneys, Robert Allen was one.  He mentioned another attorney, the name escapes me at the moment, and he had *plenty of time for reflection on what he would say* and certainly he had the opportunity whether or not to make a statement if he chose to do so . . . . As it also relates to the July 17th statement, the court finds that the statements were freely, knowingly and voluntarily made and *any question as it relates to that the Court finds not to be problematic as it relates to admissibility*."  <u>See</u> Attachment 2, trial transcript excerpts, pp. 125-126 (emphasis added).

(Ex. Y, p. 455 n. 9) (emphasis in original).

An individual who is subject to custodial interrogation must be given the prophylactic warnings prescribed in *Miranda*.  382 U.S. at 478-79, 86 S. Ct. at 1630. Statements made, whether inculpatory or exculpatory, without the benefit of these

---

[20] Mr. Sheehan acknowledged any statements made May 1, 2001, about Mr. Hall's visit to the victim's home and activities there were not suppressible (ex. E, p. 20). The hearing as a whole shows Mr. Hall was not in custody at the time and voluntarily gave the statements.

warnings are generally inadmissible unless the individual validly waives the rights and responds to interrogation.  *North Carolina v. Butler*, 441 U.S. 369, 99 S. Ct. 1755, 1757-59, 60 L. Ed. 2d 286 (1979).  Mr. Hall was not given a *Miranda* warning on May 1, 2001, because he was there voluntarily and was not in custody.  Detective Goss testified he verbally advised Mr. Hall of his *Miranda* rights on July 17, 2011 (ex. U, pp. 314-15).  The Rule 3.850 court found his testimony credible (ex. Y, p. 457).  The record shows Mr. Allen was present on May 2 to confer with Mr. Hall, and he may have been present for the interrogation as well (ex. U, pp. 253-55, 257-58).  He testified that after "going back and forth" about giving a statement about the murder, Mr. Allen advised Mr. Hall not to give a statement, and "left it with, okay, you know the ramifications, you know your legal rights; you need to make a decision on what you're going to do."  (Ex. U, p. 255).  The Rule 3.850 court found Mr. Allen and Detective Goss' evidentiary hearing testimony that Mr. Hall wanted to give a statement credible (ex. Y, p. 456).  The Rule 3.850 court did not directly address the legality of the May 2 interrogation, but the record shows Mr. Hall was sufficiently apprised of his rights, had the benefit of counsel, and his Fifth Amendment rights were not violated.  The habeas court can infer that the Rule 3.850 court found the same as a necessary step to its conclusion.

The *Edwards* rule expands the Fifth Amendment right to counsel as explained in *Miranda.*  Mr. Sheehan did not argue that Mr. Hall's July 17, 2001, statements violated his *Edwards* rights.  The Supreme Court held in *Edwards* that an accused in custody, who invokes his right to speak to police only through counsel, is not subject to further interrogation until counsel has been made available to him unless he initiates communication with the police.  *See Smith v. Illinois*, 469 U.S. 91, 94-95, 105 S. Ct. 490, 492, 83 L. Ed. 2d 488 (1984) (per curiam).

The First DCA affirmed the Rule 3.850 court's denial of Mr. Hall's motion on January 12, 2010 (ex. DD).  At the time, the clearly established federal law regarding invocation of counsel in custodial interrogation was that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation

without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153, 111. S. Ct. 486, 491, 122 L. Ed. 2d 489 (1990) (broadening the *Edwards* protection).  The First DCA's affirmation of the Rule 3.850 court's decision that the trial court's ruling that Mr. Hall's July 17, 2001, statements were admissible was not correct according to *Minnick*.  Under *Minnick*, the *Edwards* protection applied indefinitely, so the court's reasoning that Mr. Hall had contacted an attorney and had time reflect before July 17 was irrelevant because he invoked his right to counsel on May 2, 2001.[21]

However, a federal habeas court cannot issue a writ because the state court decision was erroneous or incorrect; its application of law must also be unreasonable.  *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003) (quoting *Williams*, 534 U.S. at 407, 120 S. Ct. at 1520).  The court's application of *Edwards* was not unreasonable.  In fact, one month after the First DCA opinion, the United States Supreme Court held that the goals of the *Miranda* and *Edwards* protections are satisfied "when a suspect who initially requested counsel is reinterrogated after a break in custody that is of sufficient duration to dissipate its coercive effects." *Maryland v. Shatzer*, __ U.S. __, 130 S. Ct. 1213, 1222, 175 L. Ed. 2d 1045 (2010).  In that case, Mr. Shatzer was interviewed in 2003 at the correctional institution where he was serving a sentence on an unrelated crime.  The investigator reviewed his *Miranda* rights and he requested counsel.  *Id.* at 1217. He was returned to the general prison population, and the investigator closed the investigation.  In 2006, a different investigator received new evidence that led him to interview Shatzer in a maintenance room at the prison.  *Id.* at 1218.  The investigator obtained a written

---

[21]  The Rule 3.850 court found credible Detective Chamberlain's testimony that Mr. Allen gave him permission to talk to Mr. Hall (ex. Y, p. 456).  It also found Mr. Allen's testimony credible that he would not have advised Mr. Hall to make a statement (*id.*).  Contrary to Mr. Hall's contention, the statements are not inconsistent because Mr. Allen testified he likely told Detective Chamberlain he did not represent Mr. Hall for the murder charge (ex. U, p. 256).  Although Mr. Hall contends Mr. Allen was attempting to waive Mr. Hall's Fifth Amendment rights for him, Mr. Allen was merely stating that Mr. Allen could not tell Detective Chamberlain they could not speak to Mr. Allen about the murder because he did not represent Mr. Hall for that purpose.

waiver of Shatzer's *Miranda* rights, and Shatzer made a potentially incriminating statement.  He did not request an attorney or refer to his prior request for counsel. *Id.* Five days later, the investigator returned, read the *Miranda* warning again, obtained another waiver, and Shatzer took a polygraph test.  *Id.*  When he learned he had failed, Shatzer made an inculpatory statement and requested an attorney.  *Id.* Shatzer moved to suppress his 2006 statements pursuant to *Edwards*.  *Id.*  The trial court denied the motion because there had been a break in custody, but the appellate court reversed the decision stating "the passage of time *alone* is insufficient to [end] the protections afforded by *Edwards*."  *Id.* (quoting the Court of Appeals of Maryland opinion).   The United States Supreme Court reversed, holding that a break in custody lasting greater than fourteen days between interrogations did not mandate suppression of the 2006 statements.  *Id.* at 1227 (limiting the holding in *Minnick, supra*).  As Justice Scalia pointed out in *Minnick*, after a suspect has spoken with an attorney:

> He almost certainly also has a heightened awareness. . .of his right to remain silent–since at the earliest opportunity "any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to the police under any circumstances."

*Minnick*, 498 U.S. at 162, 111 S. Ct. at 496 (Scalia, J., dissenting) (quoting *Watts v. Indiana*, 338 U.S. 49, 59, 69 S. Ct. 1347, 1358, 93 L. Ed. 1801 (1949)).

The majority opinion also noted that many lower courts had already adopted this limitation on the *Edwards* protection.  In fact, the Eleventh Circuit held in 1988 that "[a] break in custody after the invocation of fifth amendment rights ends the need for the *Edwards* rule" and dissolves the claim.  *Dunkins v. Thigpen*, 854 F.2d 394, 397 (11th Cir. 1998).  Therefore, the state court's decision was in accord with the well-settled Eleventh Circuit precedent that, while it does not establish federal law for habeas purposes, is highly relevant in determining its reasonableness. The court foreshadowed the limitation set by the Supreme Court one month later that the *Edwards* protection cannot be "eternal".  *See Shatzer*, 130 S. Ct. at 1222.

Mr. Hall's claim fails to meet either the deficient performance or prejudice prong of the *Strickland* standard.   Counsel is not deficient for failing to pursue constitutional claims he reasonably believes to be of questionable merit.  *Jackson v. Herring*, 42 F.3d 1350, 1359 (11ᵗʰ Cir. 1995)).   Mr. Hall has not shown his July 17, 2001, statements would have been suppressed had defense counsel made an *Edwards* violation argument, and even if the statements were suppressed, Mr. Hall has not shown that there is a reasonable probability the outcome of the trial would have been different.[22]   In fact, the trial court's ruling at the suppression hearing suggests an *Edwards* argument would have failed.   The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.   Mr. Hall is not entitled to federal habeas relief on this claim, and the writ should not issue.

**Ground Four**          **Ineffective assistance of counsel for failing to call witnesses to the suppression hearing to contradict the lead detective's testimony.**

Mr. Hall's fourth ground for relief alleges his counsel was ineffective for failing to call Mr. Allen, Detective Chamberlain, and Marcus Wright (doc. 1, p. 4).   Mr. Hall raised this argument as Ground II of his Rule 3.850 motion (ex. Q, p. 13).   Mr. Hall claims Mr. Allen would have testified that he did not give Detective Goss permission to speak to Mr. Hall on July 17, 2001 (doc. 2, p. 4).   Detective Chamberlain would have impeached Detective Goss's testimony that Mr. Hall was given *Miranda* warnings before the July 17 questioning.   Mr. Hall also contends Detective Chamberlain offered contradictory testimony concerning whether the interview was

---

[22]   The Rule 3.850 did not discuss the May 3, 2001, search warrant and subsequent investigation, nor was it required to.  The undersigned nevertheless notes that the valid warrant led to discovery of the same evidence that was the subject of Mr. Hall's July 17 statements.  (*See, e.g.,* pp. 60, 91, 213-221).

recorded (*id.*).  Marcus Wright testified at the grand jury proceedings (*id.*).  He also spoke to investigators in August 2001, and Mr. Hall alleges Mr. Wright told the detectives Mr. Hall had keys to the victim's house before the crime.  Mr. Hall claims this "confirms [his] testimony that the keys had nothing to do with the crime."  (*Id.*).  He asserts that had defense counsel called these people as witnesses at the suppression hearing, the court "could" have suppressed his statements and evidence and the outcome of the proceedings would have been different (*id.*).

### State Court Decision

Mr. Hall's claim as to Mr. Allen is exhausted and subject to review in federal habeas court.  Mr. Hall's claims as to other potential witnesses are unexhausted.

The Rule 3.850 court held an evidentiary hearing on this ground at which Mr. Allen testified (ex. U, p. 251).  The court found that defense counsel approached Mr. Allen to determine whether he would be a valuable witness for the suppression hearing (ex. Y, p. 457).  Mr. Allen testified that he was left with the impression that he would not be helpful (*id.*).  Defense counsel testified he investigated whether Mr. Allen would ". . .be able to assist Mr. Hall at his suppression hearing."  In his judgment, Mr. Allen was not helpful, and he testified he explained his reasons to Mr. Hall (*id.*). The court concluded defense counsel's decision not to call Mr. Allen was strategic and not outside the realm of "reasonable professional judgment".  (*Id.*).

### Federal Review of State Court Decision

The Rule 3.850 court found that defense counsel investigated Mr. Allen in preparation for trial and the suppression hearing (ex. Y, p. 457).  The record supports this finding.  The court's application of the deficient performance prong of the *Strickland* test is reasonable.  A court should not second-guess counsel's trial strategy. *Chandler,* 218 F.3d at 1314; *Waters*, 46 F.3d at 1519.

> . . .By "strategy," we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client.  For example, calling some witnesses and not others is "the epitome of a strategic decision." [*Waters*, *supra*] at 1512 (en banc); see also *id.* at

> **1518-19 (en banc); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir.1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir.1983) (stating that reliance on line of defense to exclusion of others is matter of strategy).**

*Chandler*, 218 F.3d at 1314 n.14.  Mr. Hall states that Mr. Allen would have "denied giving permission to the detectives" to talk to him.  Mr. Allen's evidentiary hearing testimony does not support this proposition.  He testified that he did not remember what he said, and in similar situations he usually tries to explain that he no longer represents the person.  (*See* ex. U, p. 11).  His opinion that he would not tell a detective he could talk to Mr. Hall is in no way an unequivocal "denial" as Mr. Hall asserts.  In fact, if anything, his testimony would tend to show he was not representing Mr. Hall for purposes of the murder investigation.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Hall is not entitled to federal habeas relief on this claim, and the writ should not issue.


**Ground Seven**          **Ineffective assistance of counsel for failing to file a motion in limine to suppress evidence of blood and a knife.**

Mr. Hall's seventh ground for relief alleges his counsel was ineffective for failing to file a motion to suppress evidence of blood found in the car Mr. Hall drove the night of the murder (doc. 1, p.; doc. 2, pp. 6-7).  This ground is restated from Ground V of Mr. Hall's motion for postconviction relief (ex. Q, p. 36).  He also claims his counsel should have impeached Detective Goss' testimony that not enough blood was found to test for D.N.A. with evidence of a police report stating there was a large amount of blood and later evidence that the blood was tested and could not be typed (ex. Q, p. 36).  Mr. Hall contends the fact that the blood produced no D.N.A. match showed the blood was irrelevant and should not have been introduced at trial

(*id.*).  Mr. Hall also alleges his counsel was ineffective for failing to file a motion to suppress a witness' testimony that he saw Mr. Hall with a knife three days before the murder (*id.*).

In sum, Mr. Hall claims this evidence and testimony was irrelevant and prejudiced his credibility (*id.* at 37).  "Defense counsel's errors, omissions, and negligence allowed the state to unfairly manufacture a murder weapon and DNA in the form of the unidentified blood and a knife that the defendant was seen with days before the crime."  (*Id.*).  Had his counsel filed a motion to suppress this evidence and testimony, the outcome of the trial would have been different.

State Court Decision

The Rule 3.850 court concluded that "evidence of blood in the vehicle that Defendant was driving, and whether Defendant was in possession of a knife, *is* relevant. . .."  (Ex. Y, p. 466) (emphasis in original).  Mr. Coby testified that Mr. Hall told him he stabbed the victim with a knife and threw it over a bridge (*id.*; ex. E, pp. 321-22).  The medical examiner testified the victim died as a result of being stabbed by a knife with a sharp point and cutting edge (ex. Y, p. 466; ex. E, pp. 434-440).  The court determined the evidence was relevant to lend credibility to Mr. Coby's testimony and as "substantive circumstantial evidence" of Mr. Hall's guilt because the knife was never found (ex. Y, p. 466).  Moreover, defense counsel attached the credibility of the witness who testified he saw Mr. Hall with a knife by questioning him about his crack cocaine use and correlating memory loss (*id.* at 467).  The court concluded Mr. Hall was not prejudiced by his counsel's failure to file a motion in limine to suppress references to the knife (*id.*).

The Rule 3.850 court also found that the State did not emphasize the blood in the car as inculpatory evidence, and defense counsel elicited testimony that the source of the blood could not be determined (*id.* at 60 and nn. 50-51).  The court further determined that Detective Goss' testimony about the amount of blood was not so inconsistent with the police report so as to affect his credibility (ex. Y, pp. 466-67).  In fact, defense counsel elicited testimony in which Detective Goss "agreed

that it is not uncommon for someone 'to maybe cut themselves and bleed inside their own vehicle.'" (Ex. Y, p. 467).  The court concluded Mr. Hall was not prejudiced by his counsel's failure to file a motion in limine relating to blood in the car (*id.*).

### Federal Review of State Court Decision

The Rule 3.850 court applied the *Strickland* standard in denying Mr. Hall's claim because he did not show his counsel's conduct prejudiced him.  Mr. Hall's Sixth Amendment claim is premised on a state evidentiary law argument: the testimony and evidence was irrelevant and prejudicial (*see* ex. Q, p. 36-41).[23]  The state court concluded the evidence was relevant and proper to show Mr. Hall's guilt. It also found the evidence was not prejudicial because: 1) the State did not rely on blood in the car, and defense counsel discredited the evidence; and 2) testimony about the knife was admissible circumstantial evidence, and defense counsel impeached the testimony with evidence of memory loss from drug use.  Therefore, the state court necessarily interpreted its own statutory rules of evidence.  It is well established that a state court's interpretation of state law binds a federal habeas court.  *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L. Ed. 2d 407 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) (conclusion that evidence was incorrectly admitted pursuant to state law is not province of federal habeas court).

The state court determination that Mr. Hall was not prejudiced by his counsel's actions is not objectively unreasonable.  Mr. Hall has not shown that the verdict would have been different absent this testimony and evidence.  *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83 (1986)). In fact, Mr. Hall's habeas petition and post-conviction motion concede as much by stating that had his counsel filed a motion to suppress, the court "would have suppressed them [the evidence] *or at*

---

[23]  The undersigned notes that Mr. Hall cites exclusively state law to support his argument that the evidence and testimony should have been excluded.

*least preserved the issue for appellate review.*"  (Doc. 2, p. 7; doc. 24, ex. Q, p. 375) (emphasis added).  Mr. Hall's counsel did not file a motion to suppress the evidence and testimony and had no reason to because they were relevant and admissible. Counsel is not deficient for failing to file a meritless motion.  *See, e.g., Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . ..");  *Brownlee v. Haley,* 306 F.3d 1043, 1066-67 (11th Cir. 2002) (same);  *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994);  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra.*  Mr. Hall is not entitled to federal habeas relief on this claim, and the writ should not issue.


**Ground Fifteen**          <u>Ineffective assistance of retained counsel for giving police permission to question Mr. Hall without counsel present.</u>

Mr. Hall's final ground for relief alleges his retained counsel, Mr. Allen, was ineffective for giving investigators permission to question him on July 17, 2001 (doc. 1, p. 5; doc. 2, p. 18).  Mr. Hall raised this in his amended motion for postconviction motion (ex. W).  He states:

> The Defendant contends that Mr. Allen should have told the police not to question his client until he was present.  The Defendant also contends that knowing the detectives intended to question the Defendant, he should have made himself available for the in-custody interview in order to protect his client's constitutional rights.  Mr. Allen did neither, [and] allowed his client to be questioned without counsel present, and thus allowed highly prejudicial statements to be used against the Defendant at trial.

(Doc. 2, p. 18; doc. 24, ex. W, p. 385).[24]  Mr. Hall alleges that but for Mr. Allen's deficient performance, "there is a great probability" the outcome of the trial would have been different."  (Doc. 2, p. 19).

<u>State Court Decision</u>

The court held an evidentiary hearing on this ground (ex. U, pp. 259-60).  Mr. Allen testified he did not recall giving permission to a detective, but he did not think he would have "*because he was not representing Defendant* beyond a consultation on the murder charges." (Ex. Y, p. 486, *see* ex. U, p. 11).[25]  The court found that Mr. Allen made it clear to Mr. Hall that he was not taking on the murder case.  It reasoned that because Mr. Allen's services were limited to a consultation, he had no duty to represent Mr. Hall at a subsequent interrogation (ex. Y, p. 486).  The court reiterated that Mr. Allen advised Mr. Hall on May 2, 2001, not to give a statement, but he seemed eager to do so (*id.*).  The court denied the claim, finding that Mr. Hall made the "ultimate decision to speak to police when he could have remained silent[,]" so Mr. Allen's performance did not prejudice him (*id.* at 487).

<u>Federal Review of State Court Decision</u>

The Rule 3.850 court weighed the credibility of the testimony and found Mr. Allen's testimony to be credible.  At the evidentiary hearing, Mr. Allen stated at the outset that he did not have an independent recollection of most of the facts at issue,

---

[24] Mr. Hall states in his response that "Detectives <u>and</u> the Court at the suppression hearing both say Allen represented the Defendant." (Doc. 29, p. 22) (emphasis in original).  Mr. Hall offers no record support for this proposition, nor does he distinguish between testimony and conclusions regarding the May 2 interrogation versus the July 17 interrogation.

[25] Mr. Allen testified:

> I saw the amended complaint.  I just don't have any independent recollection did I talk to anybody as the complaint said and told them it's okay to talk to Mr. Hall.  I really don't have an independent recollection of that.  And I have done a lot of criminal cases, a lot of criminal contract, and I know that has been pretty much my standard procedure to say, you know, somebody calls if I'm not representing them, you know.  In that case, if he had called and asked me if they could have went out to see him, I would have said, hey, you know, my representation was when I went out and talked to him; I don't represent him on the murder case, so I'm out of it.  You know, you need to find out who his attorney is.

(Ex. U, p. 11).

and his records were limited because his files were destroyed during Hurricane Ivan (ex. U, p. 252).   However, he testified that he received a call about a "hurry up proposition" when Mr. Hall was detained for violation of out-of-state probation (ex. U, p. 253).   He accepted a $1,500 fee to meet Mr. Hall in custody (*id.*).   Mr. Allen stated:

> They were investigating for a murder investigation, and he wanted someone to come out and talk to him about it, and my fee was to come out and advise him of his rights as far as remaining silent or whether he was going to cooperate with law enforcement.

(*Id.*).   Mr. Allen also told Mr. Hall he would "look at the VOP" for him to try to get a bond hearing, but he expressed concern because it was an out-of-state violation (*id.* at 255).   Mr. Allen summarized that Mr. Hall retained him to come to the police department and speak with him:  "That was the extent of my representation of him that if law enforcement called me some time after that, I would have advised them that, you know, I don't represent him in the murder case."  (Ex. U, p. 261).

Mr. Hall also testified that Mr. Allen told him not to give a statement when he met him on May 2, 2001 (ex. U, p. 269).   He further testified that after the July 17, 2001, interrogation, he called Mr. Allen and Mr. Allen stated he did not tell the detectives they could talk to Mr. Hall (*id.*).   Mr. Hall confirmed that Mr. Allen "filed a bond hearing" (*id.*).[26]

The petitioner has the burden of demonstrating his counsel's performance was constitutionally defective.  *Blankenship v. McNeil*, 542 F.3d 1253, 1274 (11th Cir. 2008).

> Because of this burden, when the evidence is unclear or counsel cannot recall specifics about his actions due to the passage of time and

---

[26]  On June 15, 2001, a motion to establish bond was filed in Escambia County Circuit Court in case no. 2001 CF 1870.  The bond hearing was to occur on August 2, 2001, but Mr. Hall was extradited to Georgia on August 1.  The docket reflects Mr. Hall was appointed a public defender at least for purposes of the initial appearance in this case .  *See* Circuit Court of Escambia County, Florida, case no. 01-1870.

faded memory, we presume counsel performed reasonably and exercised reasonable professional judgment.

*Blankenship*, 542 F.3d at 1274. Mr. Allen testified that although he did not remember details of specific conversations, it would not have been his normal practice to give the detectives permission to speak with Mr. Hall because he did not represent him (ex. U, pp. 256-57). He also believed the $1,500 fee was commensurate with what he would have charged for such a consultation (*id.* at 253). The Rule 3.850 court found that Mr. Allen's services were limited to a consultation, and this court defers to the state court's finding. *See Dasher v. Attorney General, Florida*, 574 F.3d 1310, 1313-14 (11th Cir. 2009). Therefore, Mr. Allen did not represent Mr. Hall for the murder investigation, so Mr. Hall cannot show Mr. Allen rendered ineffective assistance of counsel with respect to his July statements.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra*. Mr. Hall is not entitled to federal habeas relief on this claim, and the writ should not issue.

## CONCLUSION

The undersigned has carefully reviewed the trial transcript, record on direct appeal, motion for post-conviction relief pursuant to Rule 3.850, orders, and all submissions in this proceeding. Mr. Hall's Grounds Two, Four through Six, and Eight through Fourteen are unexhausted and defaulted from federal habeas review. Grounds One, Three, Seven, and Fifteen are without merit, and he is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

**Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.**

**The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is recommended that the court deny a certificate of appealability in its final order.**

**The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.**

**Accordingly, it is respectfully RECOMMENDED:**

**1.     That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Steven Samuel Hall* in the Circuit Court of Escambia County, Florida, case no. 01-4264, be DENIED and the clerk be directed to close the file.**

**2.     That a certificate of appealability be DENIED.**

At Pensacola, Florida, this 5th day of October, 2011.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties</u>.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).